Theodore M. Roe, OSB No. 991004
tedr@veritasbusinesslaw.com
PO Box 82657
Portland, Oregon 97282
Telephone:    (503) 207-0205
Facsimile:    (503) 207-0206

    Of Attorneys for Defendant
    Randy L L Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **NADIA ROBERTS, an individual,**<br><br>                    Plaintiff,<br><br>          v.<br><br>**RANDY L L CORPORATION, an Oregon Corporation,**<br><br>                    Defendant. | Case No. **3:24-CV-00523-HZ**<br><br>**DEFENDANT'S MOTION FOR SANCTIONS AGAINST JESSICA MOLLIGAN** |

## I.    MOTION

Pursuant to Federal Rule of Civil Procedure ("FRCP") 11, 28 U.S.C. § 1927, as well as

42 U.S.C. §12205, FRCP 54(d)(1) and (2), and the inherent authority of the Court to impose

sanctions, including attorney fee awards, against attorneys who act in bad faith, Defendant,

Randy L L Corporation, ("Defendant") hereby moves this Court for an Order imposing sanctions

against Plaintiff's counsel Jessica Molligan ("Plaintiff's counsel"), for filing and litigating claims

that were frivolous, unreasonable and brought in bad faith.  As detailed below, Plaintiff's counsel

knew at the time of filing the Complaint that Plaintiff's claims under the Americans with

Disabilities Act ("ADA") lacked any legal or factual basis but nonetheless pursued this action,

causing Defendant to incur substantial unnecessary legal fees and costs.

      As a sanction against Plaintiff's counsel, Defendant seeks an award of attorney fees in the

amount of $52,400.00 and costs in the amount of $532.08, in addition to further costs and

attorney fees associated with this Motion.  The Court should grant this Motion against Plaintiff's

counsel, because Defendant prevailed in this action when the Court granted Defendant's Motion

for Summary Judgment and the claims brought by Plaintiff's counsel were frivolous,

unreasonable, brought in bad faith or without foundation or Plaintiff's counsel continued to

litigate after it became clear that Plaintiff's claims were frivolous, unreasonable, brought in bad

faith or without foundation.

      In so moving, Defendant seeks an Order of the Court making Plaintiff's counsel jointly

and severally liable for the award of attorney fees and costs that are also sought against Plaintiff.

*Hong Kong TV Video Program, Inc. v. May Kong Market & Video Rental*, 934 F.2d 324 (9th Cir.

1991).

## II.     MEMORANDUM IN SUPPORT

### a.  Introduction

      This motion arises from Plaintiff's baseless claims under the ADA, which the Court

dismissed in full, with prejudice, when it granted Defendant's motion for summary judgment.

Plaintiff's claims were not only meritless but also brought in bad faith. Plaintiff's counsel knew

or should have known that the claims were frivolous at the time of filing but persisted in

litigating this case.  Defendant seeks sanctions to deter such conduct and to compensate for the unnecessary legal expenses incurred.

    **b.  Legal Standard**

        **i.  Rule 11 Sanctions**

FRCP 11(b) requires attorneys to ensure that pleadings are not presented for an improper purpose, that claims are warranted by existing law or a nonfrivolous argument for changing the law, and that factual contentions have evidentiary support.  If an attorney violates these requirements, Rule 11(c) permits the court to impose appropriate sanctions, including attorney fees and costs.  *Chambers v. Nasco, Inc*, 501 U.S. 32, fn 10, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("In this regard, the bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"); *Grant v. Nat'l Coll. for DUI Def., Corp.*, D.C. No. 2:12-cv-03255-GW-AGR, No. 12-56622, 2 (9th Cir. Jun 12, 2014) ("Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence." [*citing to Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010)]; *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) (district court is entitled to broad discretion in setting the amount of a fee award")); *Hong Kong TV Video Program, Inc. v. May Kong Market & Video Rental*, 934 F.2d 324 (9th Cir. 1991) ("'Sanctions [under Rule 11] must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.' Id. at 1140 (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986)).'"

### ii. 28 U.S.C. §1927

Under 28 U.S.C. § 1927, an attorney who unreasonably and vexatiously multiplies the proceedings may be required to pay the excess costs, expenses, and attorney fees caused by such conduct. This statute is aimed at deterring reckless or bad-faith litigation. *Williams v. Goelitz Candy Co.*, 131 F.3d 150 (9th Cir. 1997) ("In order to sanction counsel under § 1927, the court must find either that the filings were frivolous and counsel was reckless, or that the filings may have had some merit but that counsel intended to harass the defendant.")

### iii. Court's Inherent Authority

Federal courts have inherent authority to sanction attorneys for bad faith conduct. This authority includes imposing attorney fees and other penalties when an attorney acts with improper intent or engages in abusive litigation practices. Mark Industries, Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730, 732 (9th Cir. 1995) ("In Chambers v. NASCO, Inc., when the court determined that Rule 11 and 28 U.S.C. Sec. 1927 did not apply, it nonetheless determined that sanctions were appropriate as an exercise of the court's inherent powers"); *Mahaffey v. Milner (In re Ministries)*, BAP No. CC-20-1103-FLT, 13 (B.A.P. 9th Cir. May 28, 2021) ("the bankruptcy court held that it could exercise its inherent authority to sanction Mr. Mahaffey's bad faith conduct.")

In *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 951 (11th Cir. 1999), the court held that "[w]e agree with the Seventh and Ninth circuits and find that there are substantial justifications for finding that the reasons for assigning attorney's fees under Title VII apply equally to attorney's fees under the ADA. First, the language of the ADA's fee-shifting provision is substantially the same as the Title VII provision involved in *Christiansburg* and the Supreme

Court has stated that 'fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike."

In *Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir. 1986), in considering the award of attorney fees in an ERISA case, the court, citing to *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980), held that:

> The five point Hummell guidelines are as follows:
>
> (1) the degree of the opposing parties' culpability or bad faith;
>
> (2) the ability of the opposing parties to satisfy an award of fees;
>
> (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances;
>
> (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
>
> (5) the relative merits of the parties' positions.

The *Paddack* court continued, holding that "[n]one of the Hummell factors is 'necessarily decisive'; various permutations and combinations can support an award of attorney fees. *Id*. Consequently, which these factors are instructive in determining the award of attorney fees, they are not exclusive and the Court should take the totality of the circumstances into consideration.

### c. Argument

#### i. Plaintiff's Claims Were Frivolous or Unreasonable

Plaintiff's ADA claims lacked any legal or factual basis. As demonstrated in Defendant's motion for summary judgment, Plaintiff failed to establish a prima facie case under the ADA, including the existence of a qualifying disability, any discriminatory conduct by Defendant, or a

failure to accommodate. The Court's ruling unequivocally affirmed the lack of merit in Plaintiff's claims.

Plaintiff and Plaintiff's counsel failed to produce any evidence whatsoever in support of the meritless claims filed against the Defendant under the ADA. Many of the Plaintiff's claims were easily and demonstratively identified as false. For example, paragraph 31j of Plaintiff's complaint alleges that "[t]he sales counter is too high for wheelchair users. Violation: The sale counter exceeds the maximum allowable height of 36 inches from the finish floor in violation of Section 7.2 of the 1991 ADAAG and Sections 227.3 and 904.4 of the 2012 ADAAG."

However, the height of Defendant's counter is 35 inches. Declaration of Wael Rafeh, Exhibit 1.

This is but one example of Plaintiff and Plaintiff's counsel's failure to produce any evidence whatsoever supporting their claims. Rather, from September 26, 2023 to July 30, 2024, Plaintiff's counsel filed approximately 46 separate, virtually identical lawsuits with this Court, making virtually identical allegations.

Plaintiff's counsel knew or should have known that Plaintiff's claims were frivolous or unreasonable or otherwise lacked merit, at the time they were filed. Further, even if the Court were to accept the premise that Plaintiff's counsel did not know and should not have known that Plaintiff's claims were frivolous or unsupported by law or fact, at the time the complaint was filed, inarguably Plaintiff's counsel continued to pursue Plaintiff's claims after it became clear that Plaintiff's claims lacked merit.

/ / /

/ / /

### ii.  Plaintiff's Counsel Acted in Bad Faith

Plaintiff's counsel knew or should have known that the claims were frivolous. Despite this, counsel filed the complaint and continued to litigate the case, causing unnecessary expenses for Defendant. Specific examples of bad-faith conduct include:

1. Filing a complaint without conducting a reasonable pre-suit investigation into the factual and legal viability of the claims.

2. Filing a complaint under the ADA, knowing that Plaintiff had received compensation from Wampler, Carroll, Wilson & Sanderson, P.C.'s ("WCWS") related to the claims and/or knowing that Plaintiff's claims were barred.

3. Ignoring Defendant's and defense counsel's repeated warnings regarding the lack of merit in the claims.  Defense counsel went so far as to email Plaintiff's counsel on September 4, 2024, after asserting that Plaintiff's counsel's conduct violated Rule 11 and constituted a "fraud on the court and engaged in an abuse of process by filing meritless claims that [she] know[s] to be fraudulent," defense counsel further stated "I find it difficult to understand your desire to dig yourself into a deeper and deeper hole; however, that is your prerogative."  Declaration of Ted Roe.

4. Pursuing litigation even after the deficiencies in Plaintiff's case were highlighted during discovery and in Defendant's dispositive motions.

5. Objecting to each and every discovery request without a lawful, good faith basis to do so, (knowing that such responses do not comply with the Court's rules) thereby requiring Defendant to file motions to compel.  Declaration of Ted Roe.

6. Serving insufficient responses to Defendant's interrogatories (knowing that such responses do not comply with the Court's rules). Declaration of Ted Roe.

7. Serving untimely responses to Defendant's requests for admission and objecting to each and every request when Plaintiff's responses was finally served (knowing that such responses do not comply with the Court's rules). Declaration of Ted Roe.

8. Failing or refusing to provide defense counsel with copies of pleadings that she filed with the Court. Declaration of Ted Roe.

9. While seeking an extension for Plaintiff's response to Defendant's first request for production, Plaintiff's counsel stated in no uncertain terms that if defense counsel agreed to the extension, she "would be supplying not just responses but the documents as well." Defense counsel agreed to such extension, relying on Plaintiff's counsel's representations. However, Plaintiff's counsel refused to produce any documents, resulting in both delay and the necessity of filing of a motion to compel. Declaration of Ted Roe.

10. Plaintiff's counsel on multiple occasions sought, in bad faith, to delay discovery and final resolution of this case. Namely, failing to timely respond to motions such as Defendant's motion to set aside the default, obtaining an extension from defense counsel as described above with no intent to produce documents, extensions related to Defendant's motion for summary judgment, extension of a response to Defendant's motion to compel a response to a subpoena served on WCWS, extensions of discovery motions and discovery requests through a meritless motion to compel mediation and extend all discovery deadlines. Declaration of Ted Roe.

11. Filing Plaintiff's opposition to Defendant's motion for summary judgment after it was clear that Plaintiff's claims were frivolous, unreasonable, without foundation or in bad faith and filing of other frivolous motions such as Plaintiff's motion to compel mediation and extend all discovery deadlines, solely in an effort to delay resolution of this case and drive up Defendant's attorney fees and costs. Declaration of Ted Roe.

12. Plaintiff's counsel's objectively false statements to the Court in her motion to withdraw, in which she attested that she was "unable to reach Ms. Roberts for over two months…." However, when pressed by defense counsel and later by the Court, Plaintiff's counsel stated that she had been in communication with only two weeks. Declaration of Ted Roe.

13. Plaintiff's counsel's collusion and conspiracy to commit fraud and abuse of process with WCWS and Plaintiff in an effort to misuse the ADA to extort Oregon businesses, who were largely minority and immigrant owned, including Defendant.

14. Filing a special appearance on behalf of WCWS, that likely constituted an impermissible conflict of interest for Plaintiff's counsel.

15. Filed pleadings for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Citing to, *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996), the Ninth Circuit held that "'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument.' (internal citations and quotation marks omitted)." *Caputo ex rel. United States v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024); *see also, Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). Federal courts have also

determined time and again that a finding of "bad faith" is not necessary, if the claims were frivolous, unreasonable or without foundation. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1008 (9th Cir. 2015) ("a finding of bad faith is not necessary to impose sanctions").

Based in part on the reporting of Kyle Iboshi of KGW based in Portland, Oregon, it is believed that Plaintiff, Plaintiff's counsel and WCWS have acted in concert to abuse the judicial system and abuse citizens of the State of Oregon with fraudulent claims. Mr. Iboshi reported on August 8, 2024, in a story entitled "From Tennessee to Oregon: How lawyers turned the ADA into a 'shakedown business model.'" that "A Tennessee law firm paid people with disabilities to visit targeted businesses, then sent demand letters threatening to sue the owner if they did not comply." [1]

Mr. Iboshi continued, stating that "[o]ver the past three months, KGW has spoken with more than 40 people directly involved with or targeted by the operation run out of the Tennessee law firm Wampler, Carroll, Wilson & Sanderson." [2]

The KGW story depicted Justin Burley-Beavers, who is a former client of Plaintiff's counsel and who she has represented in 22 separate lawsuits, all of which alleged similar ADA violations as those which the Plaintiff alleges in the present case. Mr. Burley-Beavers stated that "[t]he Tennessee law firm [referring to WCWS] was telling me they needed representatives in Oregon." [3] Further, Mr. Burley-Beavers stated that WCWS assigned him "two to five places a

---

[1] https://www.kgw.com/article/news/investigations/portland-ada-act-lawsuits-shakedown-business-model/283-d0dc3293-e4d3-4376-91df-f251ba1a5f05
[2] Id.
[3] Id.

month" and paid him "$200 per place," noting further that "they [again referring to WCWS] sent [him] a check after [he] visit[ed] each place." [4]

  The KGW article depicts a message on Mr. Burley-Beavers phone from "wcws.my.site.com" stating that "[a]ssignment of new properties to be visited: 10[th] of every month.  Last day to request a change or different property: 25th of every month.  Property Visit Confirmations: Due at the end of each month. If you ever need to contact our offices, the best way is to use the Chat function inside this portal.  You may also email us at ada@wcwslaw.com or call us a 901-523-1844." [5]  There is no question that WCWS is involved with communicating and directing these individuals in Oregon, including Plaintiff and very likely is directing or otherwise controlling the Plaintiff and the present action.

  The Oregonian in an August 7, 2024 article entitled "Portland man admits he got paid $200 a visit to target businesses for disability access violations" stated that "[t]wo years ago, Colin Slevin [another former client of Plaintiff's counsel who is currently suing her for malpractice] learned from a Facebook friend about out-of-state attorneys who were said to specialize in disability access law and were looking to expand into the Pacific Northwest.  Selvin got the Tennessee lawyers' [referring to WCWS] contact numbers and reached out." [6]

  In a subsequent Oregonian article on August 30, 2024, entitled "Second man admits in court he received about $600 a month to visit Oregon businesses he then sued for disability access violations," stated that "[u]nder questioning from [U.S. Magistrate Judge Youlee Yim], Burley-Beavers said he has been "part-time employed" since January 2022 by the Memphis

---

[4] Id.
[5] Id.
[6] https://www.oregonlive.com/crime/2024/08/portland-man-admits-he-got-paid-200-a-visit-to-target-businesses-for-disability-access-violations.html

law firm and usually received an average of $600 a month in a check from the firm,
Wampler, Carroll, Wilson & Sanderson." [7]

It is clear that despite their lack of bar admission in Oregon and the United States District
Court for the District of Oregon, including any petition to practice law pro hac vice in Oregon,
WCWS has appeared to have 1) communicated with Plaintiffs, including the Plaintiff in the
present case regarding bringing lawsuits against Oregon businesses; 2) directed individuals to
particular properties, including, potentially, the Plaintiff in the present case to Defendant's
business; 3) employed and compensated individuals to visit particular properties, including
potentially, the Plaintiff in the present case in relation to Defendant's business; and 4) arranged
for those individuals to act as plaintiffs in lawsuits against such businesses including the Plaintiff
in the present case in relation to the present lawsuit.

It appears that both WCWS and Plaintiff's counsel were well aware that Plaintiff (as well
as other plaintiffs in similar cases) had not been to Defendant's business before and did not
intend to return to the business.  It further appears that WCWS and Plaintiff's counsel were also
aware that Plaintiff had been compensated for allegedly visiting Defendant's business prior to
filing suit.

Consequently, the intent is clear.  Plaintiff's counsel filed the present action, as well as
similar cases, for the sole purpose of seeking to recover attorney fees, despite the fact that the
Plaintiff had already been compensated and despite the fact that there were no ADA violations.
Further, Plaintiff's counsel appears to have no qualm about exploiting disabled people, knowing

---

[7] https://www.oregonlive.com/crime/2024/08/second-man-admits-he-received-about-600-a-month-to-visit-portland-businesses-sued-for-disability-access-violations.html

that they were paid $200 to provide a thinly veiled basis to sue Oregon businesses only to seek to collect tens of thousands of dollars in attorney fees.

Plaintiff's counsel brought this frivolous action in bad faith, on claims that she knew or should have known to be frivolous, unreasonable or without foundation. Plaintiff's counsel brought these frivolous claims in an effort to abuse the judicial system for her own financial gain. In short, Plaintiff's counsel, turned the legal process and the ADA into a "shakedown business model."

While Defendant believes that WCWS was the puppet master, pulling the strings to send exorbitant demand letters to Oregon businesses (frequently owned and/or operated by immigrants and minorities, including Defendant) and later directed meritless lawsuits to be filed against these innocent Oregon businesses, Plaintiff's counsel, Jessica Molligan, an attorney licensed with the State of Oregon and this Court, had a duty to refuse to assert meritless claims through demand letters, tantamount to extortion and bring claims with this Court that were frivolous, unreasonable, without foundation or brought in bad faith.

After defense counsel illustrated to Plaintiff's counsel on multiple occasions that Plaintiff's claims lacked merit, Plaintiff's counsel continued to litigate this action in bad faith. During that time, Plaintiff's counsel sought to delay resolution of Plaintiff's meritless claims by engaging in the conduct described above. Declaration of Ted Roe.

Despite receiving multiple opportunities to resolve this matter for less than, the then accrued attorney fees and costs, including immediately prior to the filing of the present Motion, Plaintiff's counsel, in bad faith continued to litigate this matter, knowing that the Plaintiff's claims lacked merit. Plaintiff's counsel further went so far as to file an appearance on behalf of

WCWS, after her unsuccessful attempt to withdraw from her representation of Plaintiff, in which she made objectively false statements to the Court. This appearance was likely an impermissible conflict of interest for Plaintiff's counsel. Declaration of Ted Roe, Declaration of Ted Roe.

As detailed herein, the award of prevailing attorney fees and costs, as sanctions, against the Plaintiff's counsel is justified as the Plaintiff's claims were frivolous, unreasonable or without foundation. *Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1052 (9th Cir. 2009) (*citing, Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (in which the U.S. Supreme Court held that a prevailing defendant in a Title VII case can recover an award of attorney fees "upon a finding that the plaintiff's actions [were] frivolous, unreasonable, or without foundation"). The Ninth Circuit again concluded that successful defendants are "entitled to fees where the plaintiff's action is found to be frivolous, unreasonable, or without foundation." *Lane v. Residential Funding Corp.*, 323 F.3d 739, 747 (9th Cir. 2003) (*citing, Christiansburg*).

Given the facts of the present action, it is clear that Plaintiff's claims were frivolous, unreasonable, or without foundation or Plaintiff continued to litigate this action after it became clear that such claims were frivolous, unreasonable, without foundation, or was otherwise in bad faith. Consequently, Defendant is entitled to an award of both attorney fees and costs as sanctions against Plaintiff's counsel.

### iii. Defendant Incurred Substantial Unnecessary Costs

As a direct result of Plaintiff's counsel's conduct, Defendant was forced to expend significant resources defending against frivolous claims. Defendant incurred attorney fees and

litigation costs totaling $52,932.08, which could have been avoided if Plaintiff's counsel had fulfilled her professional obligations.

The number of hours and services rendered in this matter by the attorney and the hourly rates for such are set forth in detail in Exhibit 2 and attached hereto and incorporated by reference.  That Exhibit is summarized as follows:

| Name | Position | Hourly Rate | Hours | Total Billed |
|------|----------|-------------|-------|--------------|
| Ted Roe | Attorney | $500 | 117.6 | $52,400.00 |
| | | Totals: | | $52,400.00 |

The following charges are reasonable and necessary and are not included the hourly rates set forth above or in prior awards of costs:

| | | |
|-----|------------------------------|---------|
| (a) | Postage | $15.00 |
| (b) | Subpoena Witness Fee | $80.00 |
| (c) | Process Service Fee – Subpoena | $414.98 |
| (d) | Conference Transcript Fee | $22.10 |

Based on the above, Plaintiff is entitled to an award of costs in the sum of $532.08 as authorized by FRCP 54(d)(1), such costs are billed directly to the client and are not overhead expenses already reflected in the hourly rate fee.  The above attorney fees and costs were incurred as of date of the filing of this Motion.

Additionally, in support of the Defendant's statement of costs, disbursements and attorney fees the Defendant submits that its attorney fees are reasonable and encourages this Court to award Defendant's attorney fees because such services were necessary to obtain a judgment against the Plaintiff for bringing claims that were frivolous, unreasonable, or without foundation and/or in bad faith.

/ / /

### iv. Sanctions Are Necessary to Deter Misconduct

Sanctions are necessary to deter Plaintiff's counsel and others from engaging in similar conduct in the future. Permitting such behavior undermines the integrity of the judicial process and imposes undue burdens on parties forced to defend against baseless claims.

An award of costs and attorney fees in the present action would not deter others from asserting good faith claims in a similar action. However, an award of costs and attorney fees as sanctions against Plaintiff's counsel would deter both Plaintiff's counsel and others from asserting claims to similar lawsuits that lack merit or that are brought in bad faith.

This logic was described by the U.S. Supreme Court in *Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. at 420, when it examined the legislative history of Title VII (previously viewed similarly but the court in relation to the ADA and as related to the application of an award of attorney fees against a plaintiff). The court held that during the legislative debates "several Senators explained that its allowance of awards to defendants would serve 'to deter the bringing of lawsuits without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.' If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis."

The court previously found that Congress' intent to "'deter the bringing of lawsuits without foundation' by providing that the 'prevailing party' be it plaintiff or defendant could obtain legal fees,'... is equally important to its desire to "make it easier for a plaintiff of limited

means to bring a meritorious suit." *Grubbs v. Butz*, 179 U.S.App.D.C. 18, 20, 548 F.2d 973, 975 (1976).

To leave Defendant with no ability to recover its attorney fees and costs, except against Plaintiff would be both inadequate and ignore the person who could have and should have prevented this meritless case from having ever been filed.

Perhaps one of the best illustrations of Plaintiff's counsel's misconduct was her own acknowledgement in an email she sent to defense counsel on August 19, 2024, in which she acknowledged that "[t]his case should not be proceeding through litigation." Declaration of Ted Roe. However, it was Plaintiff's counsel who filed this action, when she knew or should have known that it lacked merit.

### d. Conclusion

Plaintiff's counsel can and should be sanctioned pursuant to FRCP 11, 28 U.S.C. § 1927, as well as pursuant to the inherent authority of the Court to impose sanctions, including attorney fee and cost awards, against attorneys who act in bad faith. Additionally, while 42 U.S.C. §12205 and FRCP 54(d)(1) and (2), do not specifically provide that a plaintiff's attorney is personally liable for fees and costs, such fees and costs may be imposed as sanctions levied on Plaintiff's counsel pursuant FRCP 11, 28 U.S.C. § 1927, as well as pursuant to the inherent authority of the Court.

Plaintiff's claims were frivolous, unreasonable, without foundation or in bad faith, all brought in an effort to extort Defendant to pay unnecessary and exorbitant attorney fees for Plaintiff's counsel's own personal financial gain.

Despite Defendant's reasonable efforts to resolve this matter, Plaintiff's counsel has been substantially unjustified and/or objectively unreasonable in declining the Defendant's demands and opposing Defendant's efforts to have Plaintiff's meritless claims dismissed, in an effort to further delay this matter and increase the Defendant's costs and attorney fees.

Consequently, Plaintiff's counsel's misconduct necessitated the defense of this action and the obtaining of a judgment dismissing Plaintiff's frivolous, unreasonable, or meritless claims and supports an award of costs and attorney fees.

Based on the above, the Defendant is entitled to a total award of reasonable and necessary attorney fees, costs and prevailing party fee in the amount of $52,932.08, in addition to any attorney fees and costs incurred following the filing of this motion.

This motion is supported by the contemporaneously filed Declaration of Ted Roe.

Dated: January 2, 2025

/s/ Ted Roe
Ted Roe, OSB No. 991004
Of Attorneys for Defendant

18 - DEFENDANT'S MOTION FOR SANCTIONS AGAINST JESSICA MOLLIGAN

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b),

26-3(b), 54-1(c), or 54-3(e) because it contains 4500 words, including headings,

footnotes, and quotations, but excluding the caption, table of contents, table of cases and

authorities, signature block, exhibits, and any certificates of counsel.

Dated: January 2, 2025

<u>/s/ Ted Roe                      </u>
Ted Roe, OSB No. 991004
Of Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SANCTIONS AGAINST JESSICA MOLLIGAN and exhibits** by:

- ☐      U.S. POSTAL SERVICE
- ☐      U.S. POSTAL SERVICE, CERTIFIED MAIL, RETURN RECEIPT REQUESTED
- ☐      FACSIMILE SERVICE
- ☑      ELECTRONIC MAIL
- ☐      HAND DELIVERY
- ☐      FEDERAL EXPRESS

addressed to the following named individual(s)/business(es) at their last known address(es) on the date stated below:

Jessica Molligan
Attorney at Law
PO Box 16893
Portland, OR 97292
jessicamolligan@comcast.net

DATED this 2nd day of January, 2025.

/s/ Ted Roe
Ted Roe, OSB No. 991004
Of Attorney for Defendant