**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| **NADIA ROBERTS,** | * | |
| **an individual,** | * | |
| | * | |
| **PLAINTIFF,** | * | |
| **v.** | * | |
| | * | **Case No. 3:24-CV-00523** |
| **RANDY L L CORPORATION,** | * | |
| **a limited liability company,** | * | |
| | * | JESSICA MOLLIGAN'S RESPONSE TO |
| **DEFENDANT.** | * | DEFENDANT'S MOTION FOR |
| | * | SANCTIONS |

---

Defendant moved for sanctions against Jessica Molligan ("Molligan") for "filing and litigating claims that were frivolous, unreasonable and brought in bad faith." Defendant's motion should be denied for the following reasons:

I. Introduction

As this Court is aware, Plaintiff filed suit against Defendant in this cause to require Defendant to get into compliance with applicable provisions of the Americans with Disabilities Act. This Court ruled on an issue related to standing in an order granting summary judgment for Defendant. Contrary to Defendant's assertions that the Court's ruling "unequivocally affirmed the lack of merit," the actual order contains no such factual determination. The Court's opinion turns on lack of standing, not on frivolous factual allegations.

II. Defendant is not entitled to fees under 42 U.S.C. §12205 because the underlying complaint in this cause was dismissed due to lack of standing.

According to the Court in *Fernandez v. 23676 23726 Malibu Road LLC*, 74 F.4th 1061 (2023):

"The district court lacked jurisdiction to award defendants attorneys' fees under the ADA's fee provision after it dismissed Mr. Fernandez's underlying ADA claim for lack of standing. The court concluded that Mr. Fernandez did not have standing to bring his disability discrimination claim because he did not submit any evidence showing that he either (1) encountered or (2) had actual knowledge of any ADA violation, as necessary to establish an injury under the ADA. See *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1041–44 (9th Cir. 2008). Mr. Fernandez did not appeal that ruling and consequently failed to establish standing.

If a plaintiff fails to establish standing, a court has "no jurisdiction to hear the case." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837 (9th Cir. 2007) (per curiam). And "[a] court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees." Id.; cf. *Diamond v. Charles*, 476 U.S. 54, 69–71 (1986) (holding that a party's interest in a fee award is by itself insufficient to confer standing)…

… Because the ADA's fee provision does not independently confer jurisdiction and defendants did not move for fees under any other rule or statute, the district court lacked the authority to award fees under the ADA once it dismissed Mr. Fernandez's claim for lack of standing."

In the case at bar, this Court found for Defendant on summary judgment that Plaintiff lacked standing in this case. This court made no determination on frivolity of Plaintiffs' claims in that order. Defendant is essentially asking the Court to take judicial notice of its assertions that no ADA violations existed at the property without giving Plaintiff an opportunity to prove violations exist. Because of the impropriety of Defendant's Rule 11 and Section 1927 motions for reasons explained below, Defendant has no vehicle to obtain fees in this case.

Addressing Defendant's statements regarding the Court's inherent authority to levy sanctions, a court must find either 1) willful violation of a court's order, or 2) bad faith. Defendant has failed to show how any of Plaintiff's counsel's behavior arises to bad faith.

Plaintiff's counsel responds to each of Defendant's enumerated paragraphs as follows:

1. Plaintiff's counsel did conduct a reasonable pre-suit investigation into the factual and legal viability of Plaintiff's claims. Plaintiff's counsel implemented an inspector to verify violations at Defendant's property prior to the filing of the underlying suit.
2. The only compensation to Plaintiff for her involvement in the case was $200.00 to cover her reasonably calculated and agreed upon expenses associated with the prosecution of this case. These expenses include mileage, fuel for transportation to/from the property on multiple occasions, wear and tear on the client's vehicle, money for purchases at the property, and potential travel to/from court proceedings. This expense reimbursement is proper under Oregon Rule of Professional Conduct Rule 1.8(e)(1) which states: "a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." There is nothing in the record or otherwise in existence that indicates Plaintiff received more than what was reasonably calculated for her expenses associated with the case. Further, each client Molligan has represented in ADA cases has stated, on the record, that the reason they filed these cases was to require businesses to be in compliance with the ADA.
3. Despite Mr. Roe's contentions that the case was without merit, there is nothing in the record that indicates any of Plaintiff's claims were frivolous. Mr. Roe's repeated "warnings" to Plaintiff's counsel were nothing more than threats furtherance of his scheme to coerce Plaintiff and her counsel to pay his exorbitant legal fees.
4. Again, Defendant completely disregards the state of its property at the time of Plaintiff's initial visit and at the time of the filing of the lawsuit. Even if Defendant had made repairs to the property, based on the multitude of violations that existed, Plaintiff is still

entitled to seek injunctive relief regarding Defendant's ADA maintenance practices, or lack thereof.[1]

5. Defendant made numerous, objectionable requests to Plaintiff. The majority of these requests sought information protected by the attorney client and work product privileges. Defendant's Motions to Compel were deemed moot after summary judgment was granted. Furthermore, Mr. Roe lacks candor with the Court regarding his own client's responses to discovery.
6. Again, Plaintiff responded to all interrogatories that were not objectionable.
7. Plaintiff's responses to discovery were not untimely.
8. Plaintiff's counsel advised Mr. Roe to access her other pleadings by using PACER.
9. Plaintiff's counsel did not refuse to provide documents.
10. Plaintiff's counsel absolutely did not intentionally delay discovery or final resolution of this matter.
11. It is Plaintiff's counsel's duty to respond to a Motion for Summary Judgment.
12. Plaintiff's Counsel stated that she was unable to reach Plaintiff for any meaningful conversation for over two months, which is a true. Mr. Roe continues to engage in "gotcha" type litigation by attempting to twist the words of Plaintiff's counsel. Importantly, Mr. Roe's "source" for any communications between Plaintiff and her counsel was Kyle Iboshi. During a phone call with Plaintiff's Counsel, Mr. Roe stated that he found it hard to believe that Ms. Roberts was not communicating with Ms. Molligan, because Kyle Iboshi told him he had just recently spoken with her.

[1] The Court in *Moeller v. Taco Bell Corp*., 816 F.Supp.2d 831 (2011), held that a Request for prospective injunctive relief will be mooted by defendant's voluntary compliance only if defendant meets formidable burden of demonstrating that it is absolutely clear alleged wrongful behavior could not reasonably be expected to recur.

13. There is no evidence of fraud or abuse of process by Plaintiff's counsel. As an ADA tester and a regular patron, Ms. Roberts and her counsel were well within their rights to bring suit against Defendant for its violations of the ADA. Any allegation of the targeting of minority and immigrant owned businesses is categorically false. Ms. Roberts is, in fact, an immigrant herself. Further, Ms. Roberts and her counsel had no way of knowing that an entity named "Randy L L Corporation" is owned by an immigrant. There is no extortion by Plaintiff or her counsel in filing this case. Plaintiff and her counsel were entitled to seek remediation to the property and request appropriate fees under 42 U.S.C. 12205.
14. Defendant and its counsel continue to attempt to muddy the waters of this case by making issues where there are none. Plaintiff's counsel filed this motion to give WCWS adequate time to retain counsel to defend against a subpoena that wholly sought attorney client privileged information. It is worth noting that the due date of the response to Mr. Roe's motion to compel fell around the Thanksgiving Holiday, but Mr. Roe refused to allow for an extension of time to respond.
15. There have been no pleadings filed for an improper purpose in this case. As Ms. Roberts stated in her Declaration, the purpose of filing this case was to require this business to get in compliance with the ADA. The improper pleadings filed in this case have come from the Defendant.

Additionally, Defendant continues to make the outrageous assertion that its property did not contain any barriers to entry as described by the ADA and that all of Plaintiff's claims were meritless. This is an outright misrepresentation to the Court. On the Plaintiff's initial visit, the

property lacked any baseline accommodations for people who use wheelchairs. Specifically, the following conditions, among others, were present at the property:

1. No designated accessible parking spaces were present
2. No van accessible parking spaces were present
3. No access aisles serving any parking spaces were present
4. No signage denoting any parking spaces as accessible
5. No signage denoting any spaces as van accessible were present
6. There was no required accessible symbol on any parking space itself
7. The slope on the ramp leading to the entrance of the business was too steep
8. There was no accessible route from the business entrance to the public sidewalk

These are not marginal violations. They are basic accommodations that are common knowledge requirements for any business operating in this country. Defendant claims that Molligan filed "approximately 46 separate, virtually identical lawsuits with this Court, making virtually identical allegations." That is untrue. Contrary to Defendant's claim that this Complaint is "near identical" to other ADA enforcement complaints, the actual observed ADA violations are quite specific to Defendant's property. Still, simply filing similar complaints does not establish a presumption that the complaints are frivolous. The Court in *Wilson v. Pier 1 Imports (US), Inc.,* held, "Plaintiff does not dispute that he has filed a large number of cases but notes that "mere litigiousness is insufficient." *De Long*, 912 F.2d at 1147. The court "must examine the content of the filings." *Id*. The court has examined plaintiff's filings, including in the instant case, and finds that plaintiff's ADA claims are not frivolous." *Wilson v. Pier 1 Imports(US), Inc*., 411 F. Supp. 2d 1196 (E.D. Cal. 2006).

The Court in *Wilson* continues, stating, "Defendants argue that [the plaintiff]'s conduct is "egregious and vexatious," in part because he files "boilerplate violations of the ADA and state law." Indeed, it appears that earlier instances of Hubbard's complaints are virtually identical. It is unclear to this court, however, why uniform instances of misconduct do not justify uniform pleadings." *Id*. at 1201. This holding is consistent with the pleadings in the case at bar as it relates to ADA claims and any other area of law, for that matter. Certainly, it is an illogical and inefficient proposition to require a lawyer prosecuting a car wreck case to completely reinvent a complaint every time a similar accident occurs. The same applies under the ADA when similar claims are present at different businesses. Finally, just because there are numerous property owners in flagrant violation of the ADA does not equate to Molligan acting in bad faith.

It is telling that Defendant can only point to the sales counter height (apparently 1 inch shorter than stated in the Complaint) as "proof" that there are no ADA violations at the property and that the remaining violations alleged are just ignored.

Defendant attempts to rely on Kyle Iboshi's "reporting" to bolster some of its baseless claims against Molligan. It would not be fair for this Court to use Mr. Iboshi's hearsay "reporting" against Molligan. Furthermore, both Defendant and Mr. Iboshi present a very misleading picture of how Mr. Burley-Beavers, one of Molligan's other ADA clients, feels about his work with her. Please see Declaration of Justin Burley-Beavers, filed herewith.

III. Rule 11 Sanctions are not appropriate in this case because Defendant has not complied with the safe harbor provision, the motion for sanctions was filed after the close of the case, and the underlying complaint in this cause was not frivolous.

Defendant's Motion for Sanctions was filed **after** summary judgment was granted for Defendant. Additionally, Defendant has exhibited brazen disregard for the rules of civil procedure by failing to provide a 21-day safe harbor notice prior to filing its Rule 11 Motion for Sanctions. (*See* Declaration of Jessica Molligan).

The Court in *Islamic Shura Council of Southern California v. F.B.I.*, 757 F3d 870 (2014) held:

> "Rule 11 is intended to deter baseless filings in district court and imposes a duty of "reasonable inquiry" so that anything filed with the court is "well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* at 393, 110 S.Ct. 2447 (internal quotation marks omitted). A motion for sanctions may not be filed, however, unless there is strict compliance with Rule 11's safe harbor provision. *See Holgate v. Baldwin,*425 F.3d 671, 678 (9th Cir.2005) (holding that we "enforce [Rule 11's] safe harbor provision strictly"); *see also Ridder v. City of Springfield,* 109 F.3d 288, 296 (6th Cir.1997) (noting that "Rule 11 cases emerging in the wake of the 1993 amendments [to Rule 11] have found [compliance with] the 'safe harbor' provision to be an absolute requirement."). That provision provides that any motion for sanctions must be served on the offending party at least 21 days before the motion is filed with the court. Fed.R.Civ.P. 11(c)(2). The safe harbor provision further dictates that the motion may not be filed if the offending party timely "withdraw[s] or appropriately correct[s]" the challenged contention during the safe harbor period. *Id.*
>
> Fee sanctions compensate a party for the costs of enforcing the rule when the party taking the challenged position has refused to withdraw or correct it. *Id.* Motions for Rule 11 attorney's fees cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing. This is because once the court has decided the underlying dispute, the motion for fees cannot serve Rule 11's purpose of judicial economy. *See* Advisory Committee's Notes to the 1993 Amendments to Rule 11 (noting that a party may not serve a motion for Rule 11 sanctions after "judicial rejection of the offending contention"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.2 (3d ed.) (noting that one purpose of Rule 11 is to "encourag[e] the withdrawal of papers that violate the rule without involving the district court, thereby avoiding sanction proceedings whenever possible and streamlining the litigation process")."

Further, the Court in *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146 (9th Cir. 2003) held:

> "The safe harbor provision gives an attorney the opportunity to withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion.[6] *See* Fed.R.Civ.P. 11(c)(1)(A). We have stated that "[t]he purpose of the safe harbor ... is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions.* A motion served after the complaint had been dismissed [does] not give [the offending party] that opportunity." *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998) (emphasis in original).
>
> Beaulieu complied with the requirement of serving Retail Flooring with its Rule 11 motion 21 days before filing the motion or presenting it to the district court. Beaulieu did not serve the motion, however, until the Retail Flooring complaint had been dismissed and the period within which an amended complaint could be filed had expired. Given the timing of Beaulieu's service of motion, Retail Flooring's counsel did not have an opportunity to correct or withdraw the complaint.[8]
>
> As the court observed in *Barber,* the Advisory Committee Notes to Rule 11 state that "a party cannot delay serving its Rule 11 motion until conclusion of the case." *Barber,* 146 F.3d at 710–11. To allow such conduct would frustrate the purpose of the safe harbor provision. *Id.* at 710. Here, Beaulieu did not serve or file its motion until well after the time in which Retail Flooring could correct or withdraw its complaint had lapsed. An award of sanctions under these circumstances would frustrate the safe harbor provision. The district court's award of the Rule 11 sanction was erroneous in light of the recognition that Rule 11 sanctions are not appropriate, given the safe harbor provision, unless an offending party has "an opportunity to withdraw the complaint without suffering sanctions." *Id.* at 709."

Rule 11 fee sanctions are only appropriate when the purported offending party has refused to withdraw or correct its challenged pleading. In the present case, Plaintiff had no opportunity to correct or withdraw its challenged pleading since the case was closed. Further, while not conceding that anything filed by Plaintiff was improper, Plaintiff offered to dismiss this

case early on in litigation and this offer was rejected because Defendant demanded a preposterous amount of attorney fees and "damages."

Defendant and its counsel are attempting to use Rule 11 as both a sword and a shield in this case to extort Plaintiff and her counsel. While claiming it wanted a challenged pleading withdrawn or corrected, Defendant would not allow for any such withdrawal or correction unless Plaintiff and her counsel paid an exorbitant attorney fee to Defense Counsel and a sum to Defendant.

IV. Sanctions under 28 U.S.C. § 1927 are not appropriate in this case because Plaintiff's Counsel has not engaged in conduct that wrongfully proliferated litigation once the case commenced, Plaintiff's counsel has not engaged in subjective bad faith tactics, and Section 1927 does not apply to initial pleadings.

According to the Court in *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111 (2024), "28 U.S.C § 192718 vests United States courts with the power to hold attorneys personally liable for fees and costs incurred by the other side as a result of their misconduct. The statute authorizes the imposition of sanctions against "any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000). Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with "subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)."

Furthermore, the Court in *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461 (2022) stated, quoting *Willis v. City of Oakland*, 231 F.R.D. 597, 598 (N.D. Cal. 2005), "because Section 1927 punishes the multiplication of proceedings, the initial pleadings are beyond its reach."

In the present case, it appears the majority of Defendant's allegations relate to the underlying complaint filed in this cause. While Plaintiff and her counsel stand by the allegations cited in the complaint, even if there were problematic statements in the complaint, Section 1927 would not apply, as the complaint is an initial pleading. Importantly, there was no finding of bad faith in the order granting Defendant's summary judgment.

Further, Defendant has presented nothing to show that Plaintiff's counsel proliferated proceedings once litigation commenced. In fact, Plaintiff's counsel offered quite the opposite – a dismissal of the case with prejudice during the case's infancy. It is Defense Counsel who has continued to proliferate the filings in this case by continued motion practice and harassing discovery seeking information clearly protected by work product and attorney client privilege.

It is a blatant misstatement of fact that Molligan filed the Complaint herein believing that the ADA claims against Defendant lacked legal or factual basis. In fact, Molligan knew beyond a shadow of a doubt that Defendant was in violation of the ADA and had no reason to believe that the claims therein lacked legal basis.

It is astonishing that Defendant simply avoids the evidence and statements made in the Third Amended Declaration of Nadia Roberts Supporting Response to Motion for Summary Judgment (ECF Doc. No. 49) ("Declaration"). Is Defendant saying that Plaintiff's Declaration was untrue, or that the photos attached thereto were not accurate? Defendant is silent on that point, simply reiterating repeatedly its unfounded claim that the lawsuit that was filed was frivolous and made in bad faith.

Defendant claims Molligan "…continued to litigate after it became clear that Plaintiff's claims were frivolous, unreasonable, brought in bad faith or without foundation." In fact, the only reason Molligan had to keep litigating this case was that counsel for Defendant demanded

an exorbitant amount of attorney fees in exchange for all of Molligan's offers to dismiss this case. As a last resort, being fully aware that Defendant's property was non-compliant, and having no reason to believe in an unsuccessful result at trial, Molligan attempted to get Defendant into mediation, in the hopes that a third party might be able to reason with both Defendant and its counsel. That is hardly the behavior of someone who is in bad faith pursuing litigation for no good reason.

Molligan brought this action after her and her client observing Defendant's property and sending an unsuccessful demand letter. She did so on her client's behalf. As set forth in Plaintiff's Declaration, the suit was initiated because she was "… denied equal access to the subject property and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein based on barriers to entry that were/are present… [that, b]ased on the defendant's disregard for ADA compliance at the property, [she did] not believe that Defendant had or has any maintenance policies in place to ensure the property is kept compliant…. This is one of the more ADA non-compliant compliant properties [she had] been to…. The barriers to entry made it difficult or dangerous for [her] to exit [her] vehicle and patronize the business located on the subject property…. [She] was forced to double-park [her] vehicle in two (2) unlevel, standard parking spaces to unload [her] wheelchair from [her] vehicle…. Then, [she] had to traverse unlevel ground, through multiple vehicular ways, to approach the only ramp leading to the entrance of the business…. [She] filed this complaint to require Defendant to get into compliance with the ADA, so [she] and similarly situated others would not have such difficulty patronizing this business in the future

V. Conclusion

Plaintiff's Response to Defendant's Motion for an Award of Fees and Costs, filed herewith, is incorporated in full to this Response. For the foregoing reasons, Defendants motion for sanctions should be denied.

Dated this January 16, 2025.

/s/ Jessica Molligan
Jessica Molligan, OSB #001823

CERTIFICATE OF SERVICE

In addition to serving via e-filing, I have sent the foregoing Response to the following:

Theodore Roe
tedr@veritasbusinesslaw.com

Dated this January 16, 2025 /s/ Jessica Molligan
Jessica Molligan