IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NADIA ROBERTS, an individual,                    No. 3:24-cv-00523-HZ

               Plaintiff(s),            OPINION & ORDER

    v.

RANDY LL CORPORATION, a
corporation

               Defendant(s).


Jessica Lee Molligan
P.O. Box 16893
Portland, OR 97292

       Attorney for Plaintiff

Ted Roe
Veritas Business Law, LLC
P.O. Box 82657
Portland, OR 97282

       Attorneys for Defendant

HERNÁNDEZ, Senior Judge:

This matter is before the Court on Defendant Randy LL Corporation's Motion for Sanctions Against Jessica Molligan, ECF 63. For the following reasons the Court denies Defendant's Motion.

## BACKGROUND

On March 27, 2024, Plaintiff Nadia Roberts filed a Complaint asserting claims against Defendant for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and its implementing regulations, 28 C.F.R. Part 36. Plaintiff alleged she is an individual with a disability and is substantially limited in the major life activities of walking and standing." Compl., ECF 1, ¶¶ 6-7. Plaintiff alleged she went to Defendant's gas station in January 2024 and encountered "unlawful physical barriers, dangerous conditions and ADA violations" that "precluded and/or limited Plaintiff's access" to the property. Compl. ¶ 31.

Defendant served Plaintiff with three requests for production of documents, a first set of interrogatories, and a request for admissions between July 24, 2024, and August 13, 2024. On August 19, 2024, Plaintiff's counsel, Jessica Molligan, emailed defense counsel stating that Plaintiff had "authorized [Molligan] to offer a dismissal of the suit and Release." Def. Resp., ECF 24, Ex. 1. That same day, Plaintiff emailed defense counsel explaining that she "need[ed] to visit family at the end of the week" and requesting an extension of time to respond to the first request for production. Def. Mot. to Compel, Ex. 6 at 2. Defense counsel agreed to the requested extension and noted he was "still consulting with [Defendant] regarding [Plaintiff's] proposal" to dismiss. *Id.* Plaintiff responded to Defendant's request for production, objected to each of Defendant's 57 requests, and did not produce any documents. Def. Mot. to Compel, Ex. 7. On August 27, 2024, Defense counsel emailed Molligan and objected to the failure to produce

documents, asserted that the failure to sufficiently respond constituted bad faith, and stated that Defendant would seek sanctions against Molligan and Plaintiff unless Molligan provided an amended response to the request for production as well as "all requested documents" by August 29, 2024. *Id.*, Ex. 8. Molligan did not respond to the email.

On September 4, 2024, Defendant filed a Motion to Compel in which it sought an order "directing Plaintiff to produce the documents specified in" Defendant's first request for production and "to provide Defendant with the initial disclosure required by Fed. R. Civ. P. 26." Def. Mot. to Compel, ECF 21, at 3.

Also on September 4, 2024, Molligan moved to withdraw as Plaintiff's counsel on the basis that she had been "unable to reach [Plaintiff] for over two months." Mot., ECF 20, at 1. Defendant objected on the grounds that "inconsistencies raise questions regarding the truthfulness of [Molligan's] statement" and that Molligan's withdrawal would "significantly prejudice[] the Defendant." Def. Obj., ECF 24, at 2-3. Defense counsel noted that despite Molligan's statement that she had been unable to reach Plaintiff for over two months, Molligan had advised defense counsel on August 19, 2024, that she had been authorized by Plaintiff to dismiss this action. Roe Decl., ECF 25, ¶ 2. Defense counsel stated that during a conferral on September 4, 2024, he "pressed [Molligan] as to when she last communicated with the Plaintiff [and Molligan] responded that she last communicated with her in early August [2024]." *Id.* ¶ 3.

On September 6, 2024, the Court held a telephone hearing on the Motion to Withdraw. At the hearing Molligan stated that she "wrote the wrong word" in her Motion when she said she had been unable to contact Plaintiff for more than two months and she intended to say that she had been unable to contact Plaintiff for more than two weeks. Hearing Tr., ECF 35, at 4. The Court noted that requesting to withdraw because an attorney had been unable to contact a client

for two weeks was "very unusual." *Id.* Molligan responded that "normally [Plaintiff] was very responsive, and the contact to her was this is urgent, . . . I need to hear back from you. . . . I'm having trouble proceeding on your case . . . without you contacting me," but Molligan still had not heard from Plaintiff at the time of the hearing. *Id*. 4-5. The Court directed Molligan to file a Declaration setting out the steps she took to communicate with Plaintiff and continued the hearing to October 18, 2024.

On September 10, 2024, Molligan filed a Declaration in which she stated that on August 19, 2024 Plaintiff responded to a voicemail left by Molligan's office. Molligan Decl., ECF 28, at 1. Plaintiff did not respond to any email, voicemail, or text from Molligan's office from August 20, 2024, to September 10, 2024, even though Molligan sent Plaintiff a copy of her Motion to Withdraw on September 4, 2024. *Id.* at 2.

On September 18, 2024, Defendant filed a Motion for Summary Judgment on the basis that Plaintiff failed to timely respond to Defendant's First Request for Admissions and, therefore, the facts contained in that Request were deemed admitted and established that Plaintiff lacks standing. The Court stayed the response and reply deadlines until the Court resolved the Motion to Withdraw.

On October 25, 2024, the Court held another hearing on the Motion to Withdraw; continued the hearing to October 30, 2024; and directed Plaintiff to appear at the October 30, 2024 hearing.

At the October 30, 2024 hearing Molligan stated that she continued to have difficulty communicating with Plaintiff and that the August and early September period during which she had difficulty communicating with Plaintiff was "crucial" because at that time "we offered to dismiss this case [and] we were hit with a lot of discovery requests and then with a demand."

Hearing Tr., ECF 50, at 4. On September 19, 2024, Plaintiff emailed Molligan that "she didn't want to do these cases anymore . . . and request[ed] that [Molligan] stop communicating with her altogether." *Id*. at 5. Molligan told the Court that she could "not continue as [Plaintiff's] attorney under these circumstances." *Id*. The Court asked Plaintiff whether she still did not want Molligan to represent her and Plaintiff explained that she had not responded to Molligan's communications "because of a safety concern for [Plaintiff] and [her] kids. [She] was . . . having people show up at [her] house, by e-mails, letters, left and right. [She] felt threatened and scared" due to media coverage of other cases in which Molligan represented other plaintiffs. *Id*. at 5-6. Plaintiff stated, however, that she still wanted Molligan to represent her and the record reflected Plaintiff had been in recent communication with Molligan. The Court, therefore, denied the Motion to Withdraw. The Court directed Plaintiff to file a response to Defendant's Motion for Summary Judgment by November 14, 2024.

On November 12, 2024, Defendant filed a Motion to Compel Response to Subpoena in which it moved the Court for an order compelling non-party Tennessee law firm Wampler, Carroll, Wilson & Sanderson ("WCWS") to comply with a subpoena issued to it by Defendant. In the subpoena Defendant directed WCWS to produce documents for "inspection and copying" at defense counsel's office in Portland, Oregon. Def. Mot. to Compel, ECF 42, Ex. 1 at 1.

On November 14, 2024, Plaintiff responded to Defendant's Motion for Summary Judgment, asserted that her response to Defendant's First Request for Admissions was timely, and included Plaintiff's Declaration to establish Plaintiff had standing. On November 21, 2024, Defendant filed its Reply.

On November 26, 2024, Molligan filed a Notice of Special Appearance for Motion for Extension of Time to Respond to Motion to Compel in which Molligan appeared for WCWS to

request an extension of time for WCWS to respond to Defendant's Motion to Compel Response to Subpoena. On November 27, 2024, Defendant filed Objections to Molligan's Special Appearance and Motion for Extension of Time.

On December 19, 2024, the Court granted Defendant's Motion for Summary Judgment. The Court concluded that Plaintiff's response to Defendant's First Request for Admission was timely and that the matters therein were not deemed admitted. The Court also concluded, however, that Plaintiff failed to establish she had standing because she did not provide evidence that established she had been to Defendant's property before the January 2024 visit that was the subject of her Complaint, that she intended to return to the property, or any basis for a reasonable expectation that she would return to the property. The Court entered a Judgment in favor of Defendant and denied all pending motions as moot. Defendant then moved for sanctions against Molligan.

## DISCUSSION

Defendant seeks sanctions in the amount of $52,400 against Molligan pursuant to Federal Rule of Civil Procedure 11; 28 U.S.C. § 1927; and/or the Court's inherent authority. Defendant asserts Molligan "fil[ed] and litigat[ed] claims that were frivolous, unreasonable and brought in bad faith. . . . [Molligan] knew at the time of filing the Complaint that Plaintiff's claims . . . lacked any legal or factual basis but nonetheless pursued this action." Def.'s Mot., ECF 63, at 1-2. Molligan opposes Defendant's motion.

## I.    Sanctions Under Rule 11

### A.    Standard

Rule 11 authorizes courts to impose sanctions to "deter baseless filings and curb abuses." *Roe v. Deutsche Bank Nat'l Tr. Co., N.A. as Tr. for Argent Sec. Asset Backed Pass*

*Through Certificates, Series 2006-W3*, No. 3:24-CV-05338, 2024 WL 4653256, at *8 (W.D. Wash. Nov. 1, 2024)(quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. 533, 553 (1991)). An attorney may be subject to Rule 11 sanctions when she "presents to the court 'claims, defenses, and other legal contentions . . .  [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005)(quoting Fed. R. Civ. P. 11(b)(2)). "'A party violates Federal Rule of Civil Procedure 11(b) by submitting pleadings for an improper purpose or making claims or factual contentions without legal or evidentiary support.'" *Roe,* 2024 WL 4653256, at *8 (quoting *Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937-JLR, 2013 WL 2319401, at *2 (W.D. Wash. May 28, 2013)). Rule 11 is meant "to address frivolous or abusive filings." *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1065 (9th Cir. 2014). Rule 11 sanctions are "an extraordinary remedy" and "reserved for the rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee v. Pow Ent., Inc.,* No. 20-55928, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021)(cleaned up).

B.    **Analysis**

Molligan contends the Court should deny Defendant's Motion for Rule 11 sanctions because Defendant did not comply with the safe harbor provision of Rule 11.

Rule 11(c) authorizes courts to award sanctions subject to certain conditions including the 21-day "safe harbor" provision set out in Rule 11(c)(2), which provides that a Rule 11 "motion must [first] be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service" of the motion. "The purpose of the amendments is made

abundantly clear by the Advisory Committee Notes" to Rule 11, *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998), which provide:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

The record reflects that Defendant served Plaintiff with its Motion for Sanctions and filed the Motion the same day. Defendant, therefore, did not comply with the 21-day safe-harbor provision of Rule 11. In its Reply Defendant appears to concede that it did not serve Plaintiff with its Motion for Sanctions 21 days before it filed the Motion with the Court. Defendant contends that it advised Molligan in emails dated August 27, 2024, and September 4, 2024, that "her conduct constituted a violation of FRCP 11 and if she did not withdraw her . . . objections to Defendant's First Request for Production, Defendant would seek sanctions pursuant to . . . Rule 11" and asserts that notice was sufficient to satisfy the safe-harbor requirement of Rule 11. Def. Am. Reply, ECF 72, at 22. Warnings alone, however, are insufficient to satisfy the safe-harbor requirement:

> The district court observed that [the defendant] had given multiple warnings to [the plaintiff] about the defects of his claim. Those warnings were not motions, however, and the Rule requires service of a motion. That requirement, too, was deliberately imposed, with a recognition of the likelihood of other warnings. As the Advisory Committee stated:
>
>> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in

> person or by a telephone call or letter, of a potential violation
> before proceeding to prepare and serve a Rule 11 motion.
>
> It would therefore wrench both the language and purpose of the
> amendment to the Rule to permit an informal warning to substitute for
> service of a motion.

*Barber,* 146 F.3d at 710. *See also Radcliffe v. Rainbow Const. Co*., 254 F.3d 772, 789 (9th Cir.

2001)("Rainbow did not serve the plaintiffs with the motion in advance of filing and thus did not

comply with the twenty-one day advance service provision."); *Blumberg v. Gates*, 152 F. App'x

652, 653 (9th Cir. 2005)("We have thus rejected litigants' attempts to cure violations of the

mandatory safe harbor period by arguing that the non-movant had actual notice of the

violation.").

The Court concludes Defendant did not comply with the 21-day safe harbor

provision of Rule 11. Accordingly, the Court denies Defendant's Motion for Sanctions pursuant

to Rule11.

## II.    Sanctions Under 28 U.S.C. § 1927

Defendant asserts sanctions are appropriate under § 1927 because "Plaintiff's ADA

claims lacked any legal or factual basis. . . . Many of Plaintiff's claims were easily and

demonstratively false . . . . [and Molligan] knew or should have known that Plaintiff's claims

were frivolous or unreasonable or otherwise lacked merit at the time they were filed." Def. Mot.

at 6. Defendant asserts sanctions are appropriate because Molligan filed the Complaint "without

conducting a reasonable pre-suit investigation into the facts and legal viability of the claims,"

requested extensions of time to respond to motions, made false statements to the Court regarding

her inability to get in touch with Plaintiff related to her Motion to Withdraw, and filed a special

appearance on behalf of WCWS.

Molligan asserts sanctions under § 1927 are not appropriate because it does not apply to initial pleadings and Molligan did not engage in conduct that wrongfully proliferated litigation.

A.      **Standards**

28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "[S]ection 1927 sanctions 'must be supported by a finding of subjective bad faith.'" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)(quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Est. of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted); *accord W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir.1990); *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1185–86 (9th Cir.1988). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *In re Keegan*, 78 F.3d at 436.

Finally, sanctions under Section 1927 must be tailored to the particular conduct at issue. *See, e.g., United States v. Blodgett,* 709 F.2d 608, 610–11 (9th Cir. 1983)("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct.")(internal citations omitted)).

**B.    Sanctions for Filing Complaint**

Defendant asserts the Court should sanction Molligan pursuant to § 1927 because "Plaintiff's ADA claims lacked any legal or factual basis. . . . Many of Plaintiff's claims were easily and demonstrably false[,] . . . [Molligan] knew or should have known that Plaintiff's claims were frivolous or unreasonable or otherwise lacked merit at the time they were filed," and Molligan filed the Complaint "without conducting a reasonable pre-suit investigation into the facts and legal viability of the claims."

"Because [§ 1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan*, 78 F.3d at 435. The Ninth Circuit has "expressly held that § 1927 cannot be applied to an initial pleading." *Id. See also De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011)("sanctions under 28 U.S.C. § 1927 do not apply to complaints or initial pleadings"); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.)("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."), amended, 803 F.2d 1085 (9th Cir. 1986)). "The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *In re Keegan,* 78 F.3d at 435. "This is true even where previous lawsuits have already been filed." *Roe*, 2024 WL 4653256, at *10 (citing *Best Odds Corp. v. iBus Media Ltd.*, 657 F. App'x 641, 642 (9th Cir. 2016)(finding that district court abused its discretion by imposing sanctions under § 1927 based on the filing of a second lawsuit); *Brands v. First Transit, Inc.*, 278 F. App'x 722, 725 (9th Cir. 2008)(explaining that filing of complaints in state court, which were voluntarily dismissed, was not a sufficient basis for § 1927 sanctions in case filed before federal court)). Accordingly, to the extent that

Defendant's request for § 1927 sanctions is based on the filing of the Complaint, Defendant's Motion is denied.

### C. Multiplying Litigation

Defendant asserts sanctions under § 1927 are appropriate because Molligan made false statements to the Court when she moved to withdraw based on her inability to communicate with Plaintiff and filed a special appearance on behalf of WCWS.

#### 1. Communications Related to Motion to Withdraw

Molligan stated at the September 6, 2024 hearing that she misspoke when she stated she could not get in touch with Plaintiff for two months. Molligan also explained that Plaintiff did not respond to telephone calls, voice mails, emails, or texts during the time when Defendant was asking for discovery and Molligan made clear to Plaintiff that it was important for them to be in contact. As a result, Molligan felt her ability to represent Plaintiff was compromised. At the October 30, 2024 hearing Molligan explained that she received an email from Plaintiff on September 19, 2024 saying that Plaintiff "didn't want to do these cases anymore" and "requesting that [Molligan] stop communicating with" Plaintiff. Hearing Tr. at 5. Plaintiff told the Court at the October 30 hearing that she did not respond to Molligan's communications "because of a safety concern for [Plaintiff] and [her] kids" and she had to "take some time and research [communications from Molligan] more before [Plaintiff] could respond." *Id*. at 5-6. Thus, Plaintiff admitted that she did not communicate with Molligan for a time and Molligan's concerns that formed the basis for her Motion to Withdraw do not appear to be made in bad faith or to be frivolous or reckless. The Court, therefore, finds that Molligan's statements to the Court regarding her inability to get in touch with Plaintiff during the hearings on

Molligan's Motion to Withdraw did not multiply the proceedings in this case unreasonably and vexatiously.

### 2.    Filing a Special Appearance

Defendant asserts Molligan multiplied the proceedings in this case unreasonably and vexatiously when she filed a special appearance on behalf of WCWS because it was "likely an impermissible conflict of interest for Plaintiff's counsel." Def. Mot. at 14. Molligan stated in the Notice of Special Appearance that she appeared on behalf of WCWS "to notify this Court that WCWS is in the process of retaining counsel to defend against the subpoena duces tecum and motion to compel presented by [defense counsel] . . . and to move for an extension of time . . . to respond to the motion to compel." Notice, ECF 53, at 1. The Court declines to decide whether Molligan's limited appearance constituted a conflict of interest because the Court concludes it is questionable whether this Notice "unreasonably and vexatiously" multiplied the proceedings in this case.

Molligan filed the Notice in an attempt to move for an extension of time for WCWS to respond to the subpoena directed to it by Defendant and to respond to Defendant's Motion to Compel Response to Subpoena filed in this Court. Federal Rule of Civil Procedure 45(c)(2) provides: "A subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The subpoena "commanded" WCWS to "produce [documents] for inspection and photocopying" at the offices of defense counsel located in Portland, Oregon. It is undisputed that WCWS is located in Memphis, Tennessee. *See* ECF 41, Ex. 2 (proof of service of subpoena). It is indisputable that WCWS is located more than 100 miles away from Portland, Oregon, where it was directed to produce documents. Rule 45(g)

provides "The court for the district where compliance is required - and also, *after a motion is transferred*, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena[.]" Emphasis added. Federal Rule of Civil Procedure  37(a)(2) provides that a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Courts have held that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered. *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 982, 984 (N.D. Cal. 2015)(citing Fed. R. Civ. P. 45(d)(2)(B)(i)). *See also AngioScore, Inc. v. TriReme Med., Inc.*, No. 12 CV 3393, 2014 WL 6706873, at *1 & n.1 (N.D. Cal. Nov. 25, 2014)(holding that a Rule 45 subpoena specifying the place of compliance as more than 100 miles from nonparty's headquarters was "invalid on its face"); *First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. 219CV09577PSGGJS, 2021 WL 1526759, at *1 (C.D. Cal. Apr. 7, 2021)("Courts in the Ninth Circuit, including this one, have consistently held that where compliance is required in another district, the issuing court is without jurisdiction to enforce the subpoena.")(collecting cases); *Montgomery v. Risen*, No. 15-cv-02035-AJB-JLB, 2015 WL 12672825 (S.D. Cal. Nov. 2, 2015)("The Court lacks the jurisdiction under the federal Rules of Civil Procedure to enforce the subpoena because it is not the court where compliance is required."); *Williams v. Camden USA Inc.*, No. 3:19-CV-691-AJB-AHG, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021)("Any motion by Plaintiffs to compel Twitter's compliance with a Rule 45 subpoena should have first been filed in the district where the discovery is or will be taken or where compliance is required."). As noted WCWS is located in Memphis. Thus, the court for the district where compliance with the subpoena would have been required is the United States District Court for the Western District of Tennessee. This Court, therefore, did not

have the authority to enforce the subpoena at the time Defendant moved to compel a response to the subpoena.

In summary, although Molligan filed a Notice on behalf of WCWS, which might have been inappropriate, Defendant multiplied proceedings by demanding that WCWC produce documents more than 100 miles from its place of business and moving to compel compliance with the subpoena in this Court inappropriately. The Court finds that both parties actions with respect to the subpoena likely unnecessarily multiplied proceedings. Accordingly, the Court declines to award sanctions under § 1927.

## III,    Sanctions under Court's Inherent Authority

Defendant also requests sanctions against Molligan pursuant to the Court's inherent authority. Defendant asserts Molligan acted in bad faith when she:

(1) filed the Complaint "without conducting a reasonable pre-suit investigation";

(2) filed the Complaint "knowing that Plaintiff had received compensation from [WCWS] related to the claims and/or knowing that Plaintiff's claims were barred";

(3) ignored "defense counsel's repeated warnings regarding the lack of merit in the claims";

(4) pursued litigation after "after the deficiencies in Plaintiff's case were highlighted during discovery and in Defendant's dispositive motions";

(5) objected to "each and every discovery request without a lawful, good faith basis to do so" including serving insufficient responses to interrogatories, serving untimely responses to RFAs and refusing to produce documents in response to requests for production;

(6) sought extensions of time to produce documents, to respond to Defendant's motion to compel a response to subpoena, and to extend discovery deadlines and sought to compel mediation;

(7) made the false statement in her motion to withdraw regarding being unable to reach Plaintiff for two months;

(8) "collu[ded] and conspire[ed] to commit fraud and abuse of process
with WCWS and Plaintiff in an effort to misuse the ADA to extort Oregon
businesses, who were largely minority and immigrant owned, including
Defendant"; and

(9) filed an appearance on behalf of WCWS.

### A.    Standards

"It long has been established that a court's inherent powers [to impose sanctions]
'derive from the absolute need of a trial judge to maintain order and preserve the dignity of the
court.'" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 528–29 (C.D. Cal.
2022)(quoting *Cooke v. United States*, 267 U.S. 517 (1925)). "[B]ecause of their very potency,
inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501
U.S. 32, 44 (1991)(citations omitted). "[I]nherent powers are shielded from direct democratic
controls, [therefore,] they must be exercised with restraint and discretion." *Roadway Express Inc.
v. Piper*, 447 U.S. 752, 764 (1980). "Thus, courts may not exercise these powers without a
'specific finding of bad faith.'" *RG Abrams,* 342 F.R.D. at 529 (quoting *United States v.
Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)). "[B]ad faith . . . includes a broad range of
willful improper conduct," *Fink v. Gomez*, 239 F.3d 989, 994 (2001), such as acting
"vexatiously, wantonly, or for oppressive reasons, delaying, disrupting litigation, or [taking]
actions in the litigation for an improper purpose." *Id.* at 922 (citing *Chambers*, 501 U.S. 32, 45
(1991)).

### B.    Analysis

#### 1.    Merits of Claims

Defendant asserts Molligan filed the Complaint "without conducting a
reasonable pre-suit investigation," ignored defense counsel's assertions that Plaintiff's claims

lacked merit, and pursued litigation after Defendant pointed out perceived deficiencies in Plaintiff's case in discovery and in dispositive motions. The Court, however, did not rule on the merits of Plaintiff's claim. Rather, the Court granted Defendant's Motion for Summary Judgment on the sole basis that Plaintiff failed to establish standing. In addition, in support of the Motion for Summary Judgment Plaintiff testified that she visited the property at issue; she "was denied equal access to the subject property and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein based on barriers to entry that were/are present"; she "encountered numerous barriers to entry" related to parking her vehicle, exiting her vehicle, unloading her wheelchair, and using the ramp; and she filed this action "to require Defendant to get into compliance with the ADA so [she] and similarly situated others would not have such difficulty patronizing this business." Roberts Amended Decl., ECF 49. Plaintiff attached photographs of the property that she took at her visit that reflected issues with parking. Defendant does not establish that "Plaintiff's counsel's zealous pursuit of a possible claim, even a mistaken one, demonstrate[d] bad faith as opposed to simple error." *Boyd v. Accuray, Inc.*, No. 11-CV-01644-LHK, 2012 WL 4936591, at *7 (N.D. Cal. Oct. 17, 2012). The Court, therefore, declines to award sanctions based on these bases.

### 2.    WCWS

Defendant asserts sanctions are appropriate because Molligan acted in bad faith when she filed the Complaint "knowing that Plaintiff had received compensation from [WCWS] related to the claims" and "collu[ded] and conspire[ed] to commit fraud and abuse of process with WCWS and Plaintiff in an effort to misuse the ADA to extort Oregon businesses, who were largely minority and immigrant owned, including Defendant." Defendant alleges the $200 payment to Plaintiff suggests Molligan has "no qualm about exploiting disabled people,

knowing that they were paid $200 to provide a thinly veiled basis to sue Oregon businesses only

to seek to collect tens of thousands of dollars in attorney fees." Def. Mot., ECF 63, at 12-13.

Plaintiff, however, testified in her Declaration that she has

> been reimbursed for expenses I have incurred and will incur associated
> with the prosecution of this case. I agreed that $200.00 was a reasonable
> and accurate amount to cover 1) gas mileage/vehicle expenses for multiple
> trips to and from the property, 2) purchases at the property each time I
> visit, and 3) other travel related expenses associated with this case. I have
> not received any other payment from my counsel or anyone else for my
> work in this case or for any other reason.

Roberts Decl. ¶ 20. Defendant, on the other hand, seeks to support its allegation with news

articles by KGW and The Oregonian, which Defendant requests the Court take judicial notice of,

relating to cases brought by Molligan for individuals other than Plaintiff against businesses other

than Defendant.

"Federal Rule of Evidence 201 provides that '[t]he court may judicially

notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the

trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned.'" *Doody v. Richman Prop. Servs., Inc.*, No.

3:24-CV-01557-JES-BLM, 2025 WL 1082853, at *3 (S.D. Cal. Apr. 10, 2025)(quoting Fed. R.

Evid. 201(b)(1)-(2)). With respect to news reports and news articles "'[c]ourts may take judicial

notice of publications introduced to indicate what was in the public realm at the time, not

whether the contents of those articles were in fact true.'" *Soares v. City of San Diego*, No. 23-

CV-369-WQH-DEB, 2025 WL 951276, at *2 n.2 (S.D. Cal. Mar. 28, 2025)(quoting *Von Saher

v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). *See also

Rodriguez v. Fisher*, No. 21-cv-1442-BAS-MSB, 2022 WL 2239347, at *11 (S.D. Cal. June 22,

2022)("[T]he Court is restrained to judicially notice only the fact of news coverage, not its

truth."). Defendant would like the Court not just to acknowledge the fact of the reporting, but also to consider the contents of the news stories, which are not properly the subject of judicial notice. "[B]ecause there is no indication before the court that [Defendant] intends to use the[] [reports] for anything other than evidence of their contents," the Court denies Defendant's request that the Court take judicial notice of the news reports and articles.[1] *Holland v. King Cnty. Adult Det*., No. C12-0791JLR, 2013 WL 1192763, at *2 (W.D. Wash. Mar. 22, 2013)(quotation omitted)("Although the court may take judicial notice of news article as evidence of what was in the public realm at the time, it may not do so as evidence that the contents of the articles are in fact true.")

Defendant fails to produce admissible evidence of bad faith by Molligan related to the payment of $200 to Plaintiff in this case or an abuse of the ADA to extort Defendant. The Court, therefore, declines to exercise its discretion to award sanctions on this basis.

### 3.    Discovery

Defendant alleges Molligan acted in bad faith when she objected to "each and every discovery request without a lawful, good faith basis to do so" including boilerplate, insufficient responses to interrogatories; served untimely responses to discovery requests; and refused to produce documents in response to requests for production.

Federal Rules of Civil Procedure 26(b)(1) provides the scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of

---

[1] Even if the Court took judicial notice of the truth of the news reports, the Court notes that the reports addressed only cases brought by individuals other than Plaintiff and discussed only the experiences and cases brought by those other individuals.

the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

A party may object to a request for production or interrogatory but must state the grounds for the objection "with specificity." Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). "[B]oilerplate objections [to requests for production and interrogatories] are deficient." *Caekaert v. Watchtower Bible & Tract Soc'y of New York, Inc.*, No. CV 20-52-BLG-SPW, 2023 WL 3795394, at *3 (D. Mont. June 2, 2023). Objections that "lack[] the requisite specificity" or "merely recite[] language found in Rule 26 rather than explaining why the request is vague, ambiguous, overbroad, work product, and not reasonably calculated to lead to relevant evidence" are insufficient. *Id.* Nevertheless, even when objections are insufficient, courts are "obligated to assess the requests' proportionality and frivolity." *Id.* (citing *Nei v. Travelers Home Marine Ins. Co.*, 326 F.R.D. 652, 657 (D. Mont. 2018)).

Reviewing Defendant's requests for production and interrogatories, the Court notes that many of Defendant's requests are the kind typically denied by courts for being overly broad or unduly burdensome and, therefore, Plaintiff's failure to respond is not a reasonable basis for sanctions. "Courts routinely disfavor overly broad discovery requests that ask opposing parties to produce everything under the sun that relates to the ongoing litigation." *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 591 (E.D. Cal 2015)(collecting cases). "A typical overly broad discovery request tasks parties 'with laying out every jot and tittle of their evidentiary case[.]'" *Caekaert,* 2023 WL 3795394, at *2 (quoting *Aldapa*, 310 F.R.D. at 591). "'In the context of document production requests, an even greater burden is placed on [the opposing party] in responding to requests to produce each and every document that relates to the

claims.'" *Id.,* at *2 (quoting *Aldapa*, 310 F.R.D. at 591). "Thus, requests for production asking

for all documents related to a claim are overly burdensome on the opposing party, and thus

impermissible." *Id.* (citing *Aldapa*, 310 F.R.D. at 591)(denying request for production seeking

"all documents related to any of the allegations in the complaint.")). *See also FTC v. Am. eVoice,*

*Ltd.*, CV 13-03-M-DLC, 2017 WL 476617, at *7 (D. Mont. Feb. 3, 2017)(denying requests for

production asking for all documents "supporting, negating or otherwise relating to" allegations in

certain paragraphs of the plaintiff's complaint). Here, of Defendant's 57 requests in its first

request for production, 37 request that Plaintiff "[p]roduce all documents that concern, refer or

relate to the allegations contained in" 36 different paragraphs of the Complaint. Request 39 asks

Plaintiff to "[p]roduce all statements that Plaintiff has obtained or been provided concerning this

action or its subject matter." Request 40 seeks production of "all documents that concern, refer

or relate to any claim or complaint made by Plaintiff for any and all alleged [ADA] violations,

including but not limited to any and all demand letters." These are the kinds of requests for

production that are disfavored by courts in this circuit. *Aldapa*, 310 F.R.D. at 591 ("Courts

routinely disfavor overly broad discovery requests that ask opposing parties to produce

everything under the sun that relates to the ongoing litigation."). "It is [a party's] responsibility

to draft narrowly focused requests for production that do not place undue burdens on [the

opposing party] to respond." *Id.* Similarly many of Defendant's interrogatories are "[c]ontention

interrogatories" which "'track . . . allegations in an opposing party's pleadings, and that ask for

'each and every fact' . . . that supports the party's allegations." *Miles v. Shanghai Zhenhua Port*

*of Machinery Co., LTS.*, No. C08–5743 FDB, 2009 WL 3837523, at *1 (W.D. Wash. Nov. 17,

2009)(quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)). This type of interrogatory

"pose[s] problems for a responding party and a reviewing court. Parties are not tasked with

laying out every jot and tittle of their evidentiary case in response to interrogatories." *Tubbs v. Sacramento County Jail*, No. CIV S–06–0280 LKK GGH P, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008). "Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." *Lucero*, 240 F.R.D. at 594. *See also* Local Rule 33-1 ("Broad general interrogatories, such as those that ask an opposing party to 'state all facts on which a claim or defense is based' . . . are not permitted."). For example, Defendant asks: "What evidence do you have that" supports allegations in paragraph 31, subpart b(a) - (d) and allegations in the Complaint that removal of the alleged physical barriers, dangerous conditions, and ADA violations are readily achievable and can be accomplished and carried out without significant difficulty or expense. These kinds of interrogatories are disfavored because they are overly broad and unduly burdensome.

In addition, several of Defendant's requests for production seek information that is irrelevant or readily available to Defendant. For example, request 42 asks Plaintiff to produce "a copy of the complaint and answer, including the caption case number and name of any attorneys relating to any and all lawsuits filed on behalf of Plaintiff for alleged violation(s) of the ADA and all documents relating to any threatened legal proceeding to which Plaintiff has been and/or is a party or a witness as relating to any alleged violation(s) of the ADA." Defendant has access to PACER and can conduct a search for other ADA actions brought by Plaintiff and the documents therein. Request 50 asks Plaintiff to produce "all settlement agreements and judgments in which Plaintiff was a party." It is questionable whether Defendant is entitled to settlement agreements entered into by Plaintiff and other entities unless they are

public and Defendant may obtain judgments via PACER. Defendant also asks Plaintiff to
produce:

> all documents related to any and all communications between Plaintiff
> and/or any agent of Plaintiff and any and all law firms and /or attorneys
> outside of Oregon as related to RLL Corp, the present lawsuit, all lawsuits
> filed on behalf of Plaintiff for alleged violation(s) of the ADA and all
> threated legal proceedings to which Plaintiff has been and/or is a party or a
> witness as related to any alleged violation(s) of the ADA.

Roe Decl., Ex. C at 22. Plaintiff objected that this request is overly broad, unduly burdensome,
not calculated to lead to discovery of information related to any claim or defense and is protected
by attorney-client privilege. The Court agrees.

In short, to the extent that Defendant's requests for production and
interrogatories are impermissible, the Court finds sanctions would be unreasonable and are
unsupported. In addition, although Plaintiff's failure to provide specific responses to Defendant's
requests for production and interrogatories that were permissible may in some circumstances be
sanctionable under the Court's inherent authority, the Court declines to do so here. Defendant
filed its Motion to Compel one week after Molligan provided the insufficient responses and on
the same day Molligan filed a Motion to Withdraw. The Court did not require a response to the
Motion to Compel while the Motion to Withdraw was pending and ultimately, this matter was
resolved in Defendant's favor on summary judgment without a response to the Motion to
Compel and without further responses to Defendant's discovery requests. In light of the
procedural tangle of this case surrounding the Motion to Compel, the Motion to Withdraw, and
the Motion for Summary Judgment Court declines to find bad faith by Molligan in not
responding to the Motion to Compel or in failing to provide further responses to Defendant's
discovery requests. Accordingly, in the exercise of its discretion the Court declines to award
sanctions related to discovery.

**CONCLUSION**

The Court DENIES Defendant's Motion for Sanctions Against Jessica Molligan, ECF 63.

IT IS SO ORDERED.

DATED: September 24, 2025


_____
MARCO A. HERNÁNDEZ
United States Senior District Judge